UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

MARK B. STOLTZ,            )
      Plaintiff,       )
                      )
  vs.                )       1:04-cv-00625-SEB-VSS
                      )
UNITED STATES OF AMERICA,   )
      Defendant.     )

**ENTRY DENYING PLAINTIFF STOLTZ'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING DEFENDANT UNITED STATES OF
AMERICA'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Plaintiff's and Defendant's Cross-Motions

for Summary Judgment on Plaintiff Mark B. Stoltz's ("Stolz") claim for recovery of

federal income tax and interest erroneously assessed and collected by Defendant, the

United States of America ("the Government"), as alleged in Plaintiff's Complaint of April

6, 2004.  Specifically, Stoltz contends that he was a victim of theft and is therefore

entitled to a theft loss deduction under Internal Revenue Code ("I.R.C.") § 165, 26

U.S.C.A. § 165.  According to Stoltz, the theft occurred when he was fraudulently

induced to guarantee a $300,000 loan to a former friend and colleague's company.  The

Government asserts that I.R.C. § 166 (not § 165) applies.  Section 166's corresponding

regulations, Treas. Reg. § 1.166-9, provide that guarantee payments are deductible under

the conditions set forth in that provision or not at all.  The outcome of this case is

determined on the basis of whether I.R.C. § 165 or § 166 applies to Plaintiff's situation.

The Court, having fully considered the parties' arguments, for the reasons discussed

below <u>DENIES</u> Plaintiff's Motion for Summary Judgment and <u>GRANTS</u> Defendant's Motion for Summary Judgment.

Factual Background

Stoltz filed an Amended Return and Claim for Refund with the I.R.S. on August 23, 2001, pursuant to which he sought to deduct a theft loss in the amount of $327,165.00 from his 2000 individual income tax return.  Compl., ¶¶ 5, 19.  Based on this deduction, Stoltz claimed reimbursement of an overpayment of federal income tax for the year 2000 in the amount of $94,960.00.  Id.  The facts giving rise to Stoltz's Claim for Refund are set forth below.

*Stoltz's Relationship with Scott Pounds*

Stoltz met Scott Pounds ("Pounds") in August 1987 when they were both employed at Merrill Lynch.  Deposition of Mark B. Stoltz, p. 22, lines 7-15 [hereinafter Stoltz Depo.].  Stoltz had a friendly relationship with Pounds during the approximately two years they worked together; Stoltz was Pounds's supervisor.  Stoltz Depo., p 23, lines 16-25; p. 24, lines 1-9.  They maintained their relationship both personally and professionally after Pounds left Merrill Lynch in late 1989.  Id. at p. 24, lines 5, 6, 17-19; p. 29, lines 7-19.

After leaving Merrill Lynch, Pounds formed a car sales and leasing business called Mid-American Leasing, Inc. d/b/a Lexington Leasing ("Mid-American").  Deposition of Scott Pounds, pp. 19-20, 23 [hereinafter Pounds Depo.].  Because of their friendship, Stoltz wanted to help Pounds succeed in his new business and from time to time would

2

lend his assistance.  Stoltz Depo., p. 29, lines 17-18; p. 30, lines 1-9.  For example, on one occasion, Stoltz  agreed to personally guarantee a loan to Pounds's business by Resort Condominiums International ("RCI").  Id. at p. 30.  Stoltz, Pounds, and two others each personally guaranteed $125,000 of a $500,000 loan from RCI.[1]  Id.  Stoltz also helped Pounds borrow money from Stoltz's family members.  Id. at 30, 41.  Stoltz would in addition refer family, friends, and business associates to Pounds to purchase off-lease vehicles.  Stoltz Depo. p. 41,43.  Stoltz provided this financial assistance and support to Pounds as a friend.  Id. at 29.  Stoltz was never an owner of or investor in Pounds's businesses; he simply loaned the company money.  Id. at p. 35; p. 159, lines 23-25; p. 160, lines 1-4.  In August of 1998, though Stoltz was not financially involved with Pounds at the time, Stoltz was again approached by Pounds to lend Pounds money.  Stoltz Depo., pp. 35.

*Loan and Guaranty Transaction*

In August of 1998, Pounds asked Stoltz to loan $300,000 to Mid-American.  Stoltz Depo. at pp. 44, 45.  According to Stoltz, Pounds said that he was in trouble and needed some money but only for about 90 days, because his stepfather was going to make a gift of money to him at the end of the year.  Id. at p. 45, lines 2-6.  Stoltz testified that Pounds told him that the gift from his father had already been discussed, planned and scheduled, that this gift was going to be made annually, and that the only question was whether

---

[1] Later, Pounds helped out Stoltz financially when Stoltz was going through a divorce in 1997, by finding someone else to assume his $125,000 guarantee of the loan made to Mid-American.  Stoltz. Depo. p. 34-35.

Pounds would receive the money at Thanksgiving or Christmas of 1998. Stoltz Depo., p. 178, lines 2-12. Pounds also told Stoltz that his business generally was not in bad financial shape. Pounds Depo., p. 115, lines 1-7. Pounds believes that he explained to Stoltz at the time that he needed the loan to purchase some vehicles. Pounds Depo., p. 112, lines 23-25; p. 113, lines 1-4. Stoltz, who recently had gone through a divorce which left him financially weakened, refused Pounds's request to borrow money from him personally. Stoltz Depo., pp. 45, 47.

However, Stoltz was aware that a former client of his, one Mr. Kinzel[2] ("Kinzel") had a business that frequently sought short-term investment opportunities. Id. at 47-48. Kinzel's business, Indiana School Pictures, Inc. ("Indiana Pictures"), collected pre-payments from students for school photographs and Kinzel would attempt to find ways to invest this cash during the short term between his receipt of the payments and the delivery of the product. Id. Stoltz thus suggested to Pounds that he contact Kinzel regarding a possible loan. Id. at 48. Stoltz and/or Pounds contacted Kinzel to see if Indiana Pictures would be willing to make such a loan, and Indiana Pictures eventually agreed, but only on one condition: Stoltz would have to personally guarantee to repay the loan from Kinzel/Indiana Pictures in the event Mid-American and/or Pounds did not. Stoltz Depo. pp. 44-50, 52-54, 58-63. According to Stoltz, Pounds tearfully pleaded with him to sign a guaranty, telling Stoltz that Pounds's children would grow up without a

---

[2] The Government's filings refer to Kinzel as Robert Kinzel, while the Plaintiffs filings refer to him as Jay Kinzel. Gov. Memo. in Supp. at 6; Pl. Memo. in Supp. at 3.

father if Stoltz did not guarantee repayment of the loan; Stoltz took this statement to mean that Pounds was in imminent danger of being physically harmed.    Id. at p. 54, lines 14-19; p. 154, lines 17-20.  Stoltz testified that Pounds had told him that he (Pounds) had borrowed money from bad people who were not going to take kindly to a late payment, suggesting that he was in debt to loan sharks who would harm him if the debt was not paid.  Id. at p. 58, lines 6-19.  Stoltz believed Pounds because Pounds seemed desperate and scared.  Id. at p. 62, lines 1-2; p. 158, lines 2-5.  Furthermore, these statements did not seem implausible to Stoltz because he knew that Pounds liked to gamble in Las Vegas where one might encounter such people to loan him money.  Id. at p. 58, lines 21-25; p. 59, lines 1-2.  Although there is some disagreement as to what Pounds exactly said to Stoltz, there is no dispute that Stoltz eventually acquiesced in Pounds's pleas and agreed to guarantee the loan from Indiana Pictures.

Kinzel and Stoltz, in concert with Kinzel's attorney and Pounds, drew up the detailed terms of the loan.  Stoltz Depo. pp. 65-66.  As a result of those negotiations among Stoltz, Kinzel (on behalf of Indiana Pictures) and Pounds (on behalf of Mid-American), Indiana Pictures lent Mid-American $300,000 on October 12, 1998, with Stoltz and Pounds, both individually and as president of Mid-American, guaranteeing repayment of the loan.  Under the terms of the loan, Mid-American was to pay Indiana Pictures 12% interest per annum up to December 31, 1998, the date the loan was due to be repaid, and 18% interest per annum thereafter until the loan was repaid.  The proceeds from the loan were to be used exclusively in Mid-American's business and Pounds stated

at the time the loan was made that he intended to repay it.  Pounds Depo., pp. 82-83.

Stoltz agreed to make the guarantee as a personal favor to Pounds.  Stoltz did not provide this guaranteed repayment of the loan and the note in connection with Stoltz's business, (Pl.'s Response to U.S.'s First Requests for Admissions to Pl., Request No.1), nor did Stoltz give his guarantee with the intention of making a profit.  Id., Request No. 2.  Moreover, Stoltz did not expect or ever receive any consideration for agreeing to act as a guarantor of Pounds and his business on the loan.  Stoltz Depo., p. 164, lines 24-25; p. 165, lines 1-5.

In early 1999, Indiana Pictures attempted to collect the amount due from the loan to Mid-American.  It was unable to do so and thus Indiana Pictures, through Kinzel, turned to Stoltz to make good on his guarantee.  To discharge his obligations as a guarantor of the note, Stoltz purchased the note from Indiana Pictures by paying the unpaid principal balance and all interest due in the amount of $311,500 on January 22, 1999. Compl., ¶ 14.  Indiana Pictures assigned the note to Stoltz.  Stoltz Depo., pp. 90-91.

*Collection Efforts*

In late January of 1999, Stoltz engaged attorney Frederic C. Sipe ("Sipe"), who had also been Indiana Pictures's counsel, to collect on the note from Mid-American and Pounds.  Stoltz Depo. at p. 93, lines 7-13.  Stoltz filed suit against Pounds and his business on February 11, 1999, to recover the amount paid to Indiana Pictures on his guarantee of the note.  Id. at p. 94, lines 2-10.  Stoltz obtained a judgment against Pounds

6

on June 11, 1999, for $300,000 plus interest and $8,000 in costs and fees, and, following the expiration of the time for an appeal, instituted proceedings supplemental to judgment during the Fall of 1999. Id. at 35. In addition, Attorney Sipe contacted the Boone County prosecutor on Stoltz's behalf to report Pounds's conduct, but the prosecutor opted to take no criminal action because federal authorities had seized all of Pounds's business records. Id. at p. 90, lines 3-11; p. 91, lines 20-23; p. 92, lines 2-9; Sipe Depo., pp. 90-91. Stoltz and his counsel never were able to gain access to those records. Sipe Depo. at pp. 91-92.

Stoltz subsequently discovered that nearly everything Pounds had said to persuade him to guarantee repayment of the loan had been false. At the time Stoltz entered into the guaranty agreement, he was not aware that Pounds had ever previously lied to him regarding his business and had no reason in August of 1998 to believe Pounds was lying when he asked to borrow money. Stoltz Depo., p. 179, lines 2-16. However, Pounds later admitted to Stoltz that his stepfather never had committed to making a $300,000 gift to him prior to the end of 1998. Id. at p. 181, lines 2-15, Pounds Depo., p. 117, lines 16-18. Further, Pounds's statement that his business was not in bad shape was false. Pounds Depo., p. 115, lines 1-7. The truth was that Pounds and his business were indebted by some $2.5 million at the time Pounds sought to borrow money from Stoltz and Indiana Pictures. Id. at p. 128. This $2.5 million debt included a judgment in favor of National City Bank of approximately $800,000. Id. at 126, lines 3-4.

Sometime in 1999, while attempting to collect on the judgment, Stoltz learned that the FBI was investigating Pounds for alleged fraudulent activities at Mid-American.

7

Stoltz continued, however, to pursue collection of the judgment, including securing Pounds's testimony during two court-ordered post-judgment collection hearings, one in October 1999 and one in February 2000. Pounds testified under oath, answering all questions put to him concerning his assets, at a hearing on proceedings supplemental to judgment. Id. at 94. Following that hearing, on or about April 11, 2000, Stoltz and Sipe discussed the prospect of further collection litigation efforts against Pounds. Id. at 92. Sipe advised Stoltz, and Stoltz agreed, to cease his attempts to collect a judgment against Pounds because, based on the outcome of the April 2000 hearing and other information obtained, such efforts were unlikely to be successful. Id.; Stoltz Depo., p. 97. Pounds was prosecuted by State officials, convicted, and incarcerated later that year. Stoltz Depo., p. 98.

*Tax Returns*

On October 15, 2000, Stoltz filed his 1999 income tax return, on which return he claimed the payment to Kinzel as a non-business bad debt loss related to the guarantee of a loan, deductible under Internal Revenue Code (I.R.C.) § 166, as a short-term capital loss. On April 14, 2001, Stoltz filed his year 2000 income tax return. Once again, he treated the Pounds loan guarantee payment as a non-business bad debt, i.e., a short-term capital loss, by carrying over the unused portion of that loss from 1999 to his 2000 income tax return. Stoltz dep. p. 124. Four months later, on August 27, 2001, Stoltz changed accounting firms and executed a claim for refund for the year 2000, claiming an ordinary loss deduction (i.e., a theft loss) of $ 327,165.10. Stoltz's claim for refund was

8

denied by the Internal Revenue Service, prompting this suit for refund of $ 94,960 plus interest.

Legal Analysis

**A.**    ***Standard of Review***

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. Id. at 322-23. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Celotex, 477 U.S. at 322-24.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge, 24 F.3d at 290. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. Venters v. City of Delphi, 123 F.3d 956, 962 (7th Cir. 1997). If genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enters., Inc. v. First Chicago Corp., 975

9

F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Waldridge, 24 F.3d at 920.  A plaintiff's self-serving statements, unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

Courts are often confronted with cross-motions for summary judgment because Rule 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief.   "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard."  Kohl v. Assoc. of Trial Lawyers of Am., 183 F.R.D. 475 (D. My. 1998).  Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and the many exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The legal issues common to both parties will be discussed first, after which the parties' respective motions will be considered individually.

**B.**    *I.R.C. §§ 165 and 166*

Central to a resolution of this case is whether I.R.C. § 165 or § 166 is applicable to

the loss Stoltz suffered when he discharged his obligation as guarantor[3] of the loan to Indiana Pictures.  Stoltz's motion for summary judgment asserts that § 165 is applicable, while the Government contends that § 166 should be applied.  Therefore, our analysis begins with a review these two provisions of the I.R.C.

*I.R.C. § 165*

Section 165 provides the taxpayer a deduction for losses that are the result of a theft.  I.R.C. § 165 states in relevant part:

> (a) General rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.
>
> . . . .
>
> (c) Limitation on losses of individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to--
>
> > (1) losses incurred in a trade or business;
> >
> > (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and
> >
> > (3) except as provided in subsection (h), losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.
>
> ....
>
> (e) Theft losses.--For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.

---

[3] A guarantor assumes liability for the debt of another person upon default.  Pollas v. Hardware Wholesalers, Inc., 663 N.E.2d 1188 (Ind. Ct. App. 1996).

In certain circumstances, an individual is entitled to deduct from income taxes non-insured losses arising from theft.  I.R.C. § 165(c)(3).  The question of whether the taxpayer has been the victim of a "theft" for purposes of a § 165 is ultimately determined by the law of the state where the loss was sustained.  Edwards v. Bromberg, 232 F.2d 107, 111 (5th Cir. 1956).  The "exact nature of the crime, whether larceny or embezzlement, or obtaining money under false pretenses, swindling or other wrongful deprivations of the property of another, is of little importance so long as it amounts to theft."  Id.  Therefore, whether Stoltz was a victim of theft for purposes of § 165 is determined under Indiana law, as discussed more fully below.

*I.R.C. § 166*

The Government contends that the tax treatment of a payment on a guarantee is governed solely by the provisions of I.R.C. § 166, which states:

(a) General rule.--

(1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

(2) Partially worthless debts.--When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

. . . .

(d) Nonbusiness debts.--

(1) General rule.--In the case of a taxpayer other than a corporation--

(A) subsection (a) shall not apply to any nonbusiness debt;

12

and

(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year.

(2) Nonbusiness debt defined.--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than--

(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or

(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

Pursuant to its authority in I.R.C. § 7805, the IRS promulgated Treasury Regulation ("Treas. Reg.") § 1.166-9, 26 C.F.R. § 1.166-9, effective for taxable years beginning after December 31, 1975, to address the tax treatment of guarantee payments. This regulation stands as the sole regulatory authority dealing with the tax deductibility of guarantee payments. Treas. Reg. §1.166-9 applies to all debt obligations, whether issued by corporate or noncorporate obligors, and to all guarantors of debt obligations, whether a corporation, an individual, a trust, an estate or partnership.

Treas. Reg. §1.166-9(e)(1) requires that the guarantor received reasonable consideration for entering into the agreement in order for the guarantee payment to be treated as a worthless debt. The regulation further provides that a guarantee payment will be treated as a worthless debt only if three conditions are met: (1) the guarantee agreement must have been entered into either in the course of the taxpayer's trade or business or with an intent to make a profit; (2) the taxpayer must have had a legal

13

obligation to make the guarantee payment; and (3) the guarantee agreement was entered into before the obligation became worthless.  § 1.166-9(d).  The last provisions of Treas. Reg. §§ 1.166-9(a, b) require that the deductibility of all guarantee payments, whether made in connection with the taxpayer's trade or business or made in connection with a transaction entered into for profit, be determined under Treas. Reg. § 1.166-9 and not under either I.R.C. §§ 163 or 165.  Thus, the last section of Treas. Reg. §1.166-9(a) provides that "neither section 163 (relating to interest) nor section 165 (relating to losses) shall apply with respect to such a payment."

**C.**    *Stoltz's Motion for Summary Judgment*

Stoltz contends that Pounds committed a theft as defined under Indiana law when Stoltz was drawn into providing the guarantee agreement on the loan from Indiana Pictures, thus making I.R.C. § 165 applicable.  Plaintiff's  claim for recovery of federal income tax and interest erroneously assessed and collected by Defendant depends on a finding that he was a victim of theft and therefore entitled to a theft loss deduction, under I.R.C. § 165, 26 U.S.C.A. § 165.

As excerpted above, § 165(a) provides, that deductible losses include "losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from ... theft."  I.R.C. § 165(c)(3).  As previously noted, the question of whether the taxpayer has been the victim of a "theft," for purposes of a § 165 theft loss deduction, is to be determined by the law of the state where the loss was sustained. Edwards v. Bromberg, 232 F.2d 107, 111 (5th Cir. 1956).  Therefore, in order for Stoltz

to succeed in establishing that his guarantee payment was in reality a theft loss, he must show, *inter alia*, that, under Indiana law, the guarantee payment constituted a theft against him.  See Id. and Paine v. Comm., 63 T.C. 736, 740 (1975), aff'd without published opinion, 523 F.2d 1053 (1975).

The controlling Indiana statute is I.C. § 35-43-4-(1-8), which provides that a theft occurs if "[a] person knowingly or intentionally exerts unauthorized control over property of another person with intent to deprive the other person of any part of its value or use." I.C. § 35-43-4-2(a).  A plain reading of the statute makes clear that before there can be a theft under Indiana law, a person must, *inter alia*, exert unauthorized control over the property of another.  I.C. § 35-43-4-2(a).  What constitutes "exertion of control over a person's property" is defined in I.C. § 35-43-4-1(a) and includes creating an encumbrance on another's property.  The Indiana Supreme Court has noted that, to prove control over property for purposes of Indiana's theft statute, one does not need in all cases to show possession.  Williams v. State, 253 N.E. 2d 242, 246 (Ind. 1969).

In Coburn v. State, 461 N.E.2d 1154 (Ind. Ct. App. 1984), the Indiana Court of Appeals examined the offense of theft by means of creating a false impression and observed that the crime is committed "'where a loan of money is obtained by means of a false statement concerning an existing or past fact . . . .  [T]he gravamen of the offense is in the making of the false pretense with intent to defraud and thereby obtaining another's property'"  Id. at 1156-57 (quoting 32 AM. JUR. 2D FALSE PRETENSES §§ 14, 38 (1982)). The Coburn Court affirmed the convictions on the theft counts where the evidence

15

demonstrated that the defendant's statements had created a false impression in the victim on each occasion when she loaned him the money; the false impressions were created by means of making false statements of existing fact. Id. at 1158. In Coburn, the court rejected the defendant's argument that he lacked the requisite criminal intent to deprive the victim of her money because the funds he received were loans. Id. at 1157. The court similarly disregarded the defendant's defense that he intended to repay the loans. Id. at 1158.

Stoltz contends that the facts of the present case likewise establish that Pounds committed theft by making false statements to Stoltz, and by creating false impressions, with the intent of obtaining Stoltz's money. According to Stoltz, the theft was accomplished by Pounds having used false statements to induce Stoltz, by fraud, to guarantee a loan to Pounds's company after Stoltz had refused Pounds's request to loan him the money directly. Pounds lied to Stoltz to persuade him to guarantee the loan, and, when Stoltz was forced to make good on the guaranty to repay the loan, Pounds was able to obtain Stoltz's money. Pl. Memo. in Supp. of S.J. at 10. Stoltz contends that Pounds exerted control over his property (i.e., an encumbrance was created on Stoltz's property) because of the circumstances that surrounded the obtaining of the guarantee contract.[4]

_____

[4] Plaintiff states, "One, undisputed fact demonstrates that Pounds' [sic] committed a theft of Stoltz's property. Pounds could not obtain the "loan" without Stoltz's guarantee. Without Stoltz's credit, Pounds would not have obtained any money from Indiana School Pictures. Pounds stole Stoltz's money by using fraud to induce Stoltz to give him access to his credit, and when Stoltz signed the guaranty as a result of Pounds' misrepresentations, Stoltz's property (and credit) was encumbered. A theft occurred even
(continued...)

16

The main flaw in Stoltz's argument is that Pounds never obtained Stoltz's money; Pounds obtained Kinzel's money and Kinzel in turn obtained Stoltz's money. Without citation to any controlling legal authority, Stoltz contends that Pounds's machinations somehow created an encumbrance on Stoltz's property beginning at the time Stoltz signed the guarantee contracts. Whatever reactions Pounds's false statements and deceitful actions may have put in play, they did not create an encumbrance on Plaintiff's property at the time the guarantee was executed or, for that matter, at any other time. There is no evidence in this record that Stoltz's property was in any way impaired by his guaranty on behalf of Kinzel. As the Supreme Court noted in Putnam v. Commissioner, 352 U.S. 82, 85 (1956), Plaintiff's obligation to make the guarantee/insurance payment (i.e., the alleged encumbrance) does not arise until after the debtor failed to repay the loan.

> The familiar rule is that, instanter upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes.

Id. Here, it was Indiana Picture's property, to wit, the loaned funds, that Pounds acquired control over, not Stoltz's property. Since Plaintiff cannot establish a necessary element of theft under Indiana law, Plaintiff's entitlement to a tax deduction based on theft also fails.

In determining that Stoltz did not become a victim of theft when the guaranty was provided is not to say he wasn't wronged by Pounds. Based on Stoltz's version of the

---

[4](...continued)
before Stoltz paid on his guarantee because Pounds used fraud to gain control over Stoltz's credit and property." Stolz Reply in Supp. at 2.

circumstances surrounding the guarantee agreement, it appears he was the victim of common law fraud, which, under Indiana law requires a party to "prove five essential elements: (1) a material misrepresentation, (2) of past or existing facts, (3) the falsity of the representation, (4) the representation was made with knowledge or reckless ignorance of its falsity, (5) and detrimental reliance on the representations." AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc., 816 N.E.2d 40, 51 (Ind. App. Ct. 2004); citing Browning v. Walters, 616 N.E.2d 1040, 1047 (Ind. Ct. App.1993).

In this case, the facts establish that Stoltz relied on Pounds's representations that his business was not in bad financial shape, that his stepfather had agreed to make him a gift of money and that he would be physically harmed if he did not repay an outstanding debt. Pounds knew that these representations of past or existing facts were untrue. Stoltz Depo., p. 181, lines 2-10; p. 117, lines 1-4; p. 115, lines 1-7; Pounds Depo., p. 121-22. In entering into the guarantee agreement with Indiana Pictures, Stoltz relied on Pounds's false representations to his detriment. The parties have not discussed common law fraud in their briefs to the Court, no doubt in recognition of the fact that common law fraud is a wrong separate and distinct from theft. Without the element of unauthorized control, the fraud Stoltz suffered can not be classified as a theft.

We repeat for clarity: under Indiana law and under the facts of this case, Pounds's theft would have to have been committed against Indiana Pictures, since the property "stolen" was the $300,000 that Indiana Pictures lent to Mid-American (Pounds); at the time of the payment to Mid-American/Pounds by Indiana Pictures, Pounds did not

18

wrongfully obtain any property right belonging to Stotlz under the guarantee agreement since the guarantee obligating Stoltz was between Stoltz and Indiana Pictures. Accordingly, Plaintiff's subsequent payment on his guarantee obligation to Indiana Pictures did not constitute a theft from Stotlz by Pounds under Indiana law, and because no theft occurred Stoltz is not entitled to a tax deduction on that theory and his motion for summary judgment must be denied.

**D.    *Government's Motion for Summary Judgment***

The Government maintains that I.R.C. § 166 is the controlling provision applicable to Plaintiff's loss and that the Treasury Regulations under I.R.C. § 166 provide the single authority for the year in issue dealing with losses from guarantee payments.  The deductibility of Stoltz's guarantee payment must therefore be determined in accordance with these regulations.  I.R.C. § 166 provides that only guarantee payments arising out of the taxpayer's trade or business or from some profit motive are deductible; all other obligations, such as guarantee payments arising out of friendship, are not deductible.  See Gov. Memo. in Supp. of Summ. J. at 22.  Stoltz agrees with the Government's assertion that he is not entitled to deduct the Pounds loss, either as a business bad debt or nonbusiness bad debt under § 166.[5]

---

[5] Stoltz actually argues that § 166 should not apply at all.  Stoltz contends that the Government's interpretation of the scope of § 166, and its accompanying regulation 1.166.-9, is too broad and is erroneously premised on the assumption that Stoltz's loss of money was due to a legitimate guaranty.  Plaintiff argues that he has alleged that the guaranty was a theft disguised as a legitimate transaction.  Pl. Memo. in Supp. of S.J. at 17.  We have previously considered this argument and rejected it.

Deductions are a matter of legislative grace requiring a clear expression of their scope in the I.R.C. or the interpretive regulations before they can be allowed.  See Commissioner v. National Alfalfa Dehydrating and Milling Co., 417 U.S. 134, 134 (1974) and Indopco v. Commissioner, 503 U.S. 79, 84 (1992).  Where a guarantee generates a tax consequence, it will always be because the transaction turned sour thereby creating a loss.  Tying this deduction to the borrower's intent to make good on a guarantee would make it available to virtually every loan that is not repaid.  To forestall such an abuse, the I.R.C. includes a clear distinction between claims of loss for theft under I.R.C. § 165 and claims of loss resulting from guarantees under I.R.C. § 166.

In this case, the critical contract obligation was established between the creditor (Indiana Pictures) and the guarantor (Stoltz), not between the creditor and original debtor (Mid-American); therefore, I.R.C. § 166 applies, but renders this deduction unavailable as being a nonbusiness transaction or lacking a profit motive.  Accordingly, we shall GRANT Defendant's Motion for Summary Judgment.

Conclusion

Stoltz's efforts in this litigation founder on his attempt to transform a loss based on his guarantee into a theft loss.  After reviewing the relevant I.R.C. provisions, Treasury Regulations, Indiana statutes, and controlling case law, it is clear to us that the transaction between Indiana Pictures and Stoltz was a guarantee entered into for reasons personal to Stoltz and Pounds.  When Stoltz provided his guarantee to the innocent lender and thereafter was required to make good on that guarantee when the loan was not repaid,

20

I.R.C. § 166 was implicated and became controlling as to the tax consequences of that transaction, ultimately rendering the deduction unavailable.

We are more than a little sympathetic to Stoltz's predicament caused by his friend's deceits and betrayal, which left him more than $300,000 poorer (not to mention the costs of this litigation). However, our sympathy cannot trump Congress's clear intention to limit these deductions as reflected in the applicable tax regulations.

The Government's Motion for Summary Judgment accordingly is GRANTED and Plaintiff's complaint is dismissed with prejudice, based on I.R.C. § 166 and Treas. Reg. § 1.166-9. For these reasons, Judgment shall enter in favor of Defendant on its Motion for Summary Judgment. IT IS SO ORDERED.

Date: _____01/17/2006_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copy to:

Peter H. Donahoe
HILL FULWIDER MCDOWELL FUNK & MATTHEWS
pete@hfmfm.com

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov

Alan J. Irvin
HILL FULWIDER MCDOWELL FUNK & MATTHEWS
alan@hfmfm.com

Stephen Tancill Lyons
U. S. DEPARTMENT OF JUSTICE
stephen.t.lyons@usdoj.gov